UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| KAREN HOWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:18-CV-00109-JRG-CRW |
| | ) | |
| JOHNNY FITZ, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Petitioner Karen Howell's Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. 34], the State of Tennessee's Answer [Doc. 36], and Ms. Howell's Reply [Doc. 40]. For the reasons herein, the Court will deny Ms. Howell's petition.

## I.    BACKGROUND

In 1998, Ms. Howell pleaded guilty in Greene County Criminal Court to three counts of felony first-degree murder, one count of attempted first-degree murder, two counts of especially aggravated kidnapping, two counts of aggravated kidnapping, and one count of theft over $1,000. She unsuccessfully pursued direct review and collateral review of her convictions. In 2006, the Tennessee Supreme Court, in affirming the denial of her request for collateral relief, recited the facts of her case as follows:

> On April 6, 1997, Howell and her co-defendants, Natasha Cornett, Crystal Sturgall, Joseph Risner, Dean Mullins, and Jason Bryant, planned a trip from their homes in Pikeville, Kentucky, to New Orleans, Louisiana. At the time, Howell was seventeen years old; Bryant was fourteen years old; and each of the remaining co-defendants was at least eighteen years old. Prior to leaving Kentucky in Risner's vehicle, Howell and her co-defendants secured a nine millimeter handgun, a .25 caliber handgun, and cash. While en route, they discussed the possibility of stealing a vehicle due to the poor condition of Risner's vehicle.

At a rest stop on Interstate 81 near Greeneville, Tennessee, Mr. Lillelid, a Jehovah's Witness, approached Howell and her co-defendants at a picnic table and began discussing his religious views. At some point, Risner displayed one of the firearms and said, 'I hate to do you this way, but we are going to have to take you with us for your van.' Risner directed the Lillelid family to their van even though Mr. Lillelid offered the group his keys and wallet in exchange for allowing the family to remain at the rest area.

Mr. Lillelid drove the van, and Risner, who was still armed, sat in the passenger seat. Howell, Bryant, and Cornett also rode in the van with the Lillelids. Mullins and Sturgall followed in Risner's vehicle. Mrs. Lillelid began singing in an attempt to console the crying children, and Bryant ordered her to stop. Risner subsequently directed Mr. Lillelid to a secluded road and ordered him to stop the van. Once outside the van, all four members of the Lillelid family were shot multiple times. Bryant claimed that Risner and Mullins were the shooters, but Howell and her remaining co-defendants maintained that Bryant was the shooter. As Risner drove Howell and her co-defendants from the scene, the van struck one or more of the victims.

Howell and her co-defendants were apprehended in Arizona after failing to cross the border into Mexico. At the time of their arrests, Howell and several of her co-defendants had personal items belonging to the Lillelids in their possession.

The State offered Howell and her co-defendants a 'package plea offer' whereby the State would not seek the death penalty against the four adult co-defendants if Howell and all of her co-defendants agreed to enter guilty pleas to the offenses. The plea offer provided for concurrent sentences of twenty-five years for each conviction of especially aggravated kidnapping, twelve years for each aggravated kidnapping conviction, and four years for the theft conviction. The trial court would determine the sentences for the felony murder and attempted first degree murder convictions.

Howell and her co-defendants accepted the State's offer. Following a sentencing hearing, the trial court sentenced Howell to life without the possibility of parole for each of the three felony murder convictions and twenty-five years for the attempted murder conviction. The trial court ordered that each sentence be served consecutively. The Court of Criminal Appeals affirmed Howell's sentences on appeal.

Howell subsequently filed a post-conviction relief petition alleging that she received ineffective assistance of counsel during proceedings in both the juvenile court and the criminal court and that her guilty plea was not knowingly and

voluntarily entered. Following a hearing, the post-conviction court denied Howell relief. The Court of Criminal Appeals affirmed the post-conviction court's judgment. We granted review.

*Howell v. State*, 185 S.W.3d 319, 324–26 (Tenn. 2006) (footnote and citation omitted).

After failing to obtain collateral relief at the state level, Ms. Howell petitioned this Court for habeas relief under 28 U.S.C. § 2254, contending that her guilty pleas were unconstitutional and that her counsel was ineffective. *Howell v. Hodge*, No. 2:06–CV–108, 2010 WL 1252201, at *1 (E.D. Tenn. Mar. 24, 2010). The Court denied her § 2254 petition, *id.* at *19–20, and the Sixth Circuit affirmed the Court's decision, *Howell v. Hodge*, 710 F.3d 381, 387 (6th Cir. 2013). Several years later, Ms. Howell again moved for collateral relief in the state courts, relying this time on the Supreme Court's then-newly minted opinion of *Miller v. Alabama*, 567 U.S. 460 (2012). [Second Am. Pet. ¶ 11(b)].

In *Miller*, the Supreme Court held that a juvenile defendant's receipt of a mandatory life sentence without parole violates the Eighth Amendment's prohibition against cruel and unusual punishment because "mandatory penalty schemes" prevent the sentencer from considering "the 'mitigating qualities of youth,'" which is a necessary consideration under the Eighth Amendment because it "diminish[es] the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 U.S. at 472, 474, 476 (quotation omitted). But the Greene County Criminal Court ruled that *Miller* could not avail Ms. Howell because "she did not receive [her] sentence without individualized consideration in sentencing nor as a result of a *mandatory* penalty scheme as was at issue in *Miller*." [Greene Cty. Criminal Ct. Order, Doc. 23-2, at 2]. "Far from being 'mandatory,'" the Greene County Criminal Court wrote, "Tennessee's sentencing scheme affords 'substantial discretion' to a sentencing judge in a case such as Ms. Howell's." [*Id.* (citing *State v. Howell*, 34 S.W.3d 484,

484, 494 (Tenn. Ct. Crim. App. 2000))]. Although Ms. Howell appealed the Greene County Criminal Court's order, the Tennessee Court of Criminal Appeals, on procedural grounds, declined to consider her appeal, [Tenn. Ct. Criminal Appeals Order, Doc. 23-3, at 1–2], and the Tennessee Supreme Court denied her application for permission to appeal, [Tenn. Supreme Ct. Order, Doc. 23-4, at 1].

A few years later, however, Ms. Howell continued her pursuit of collateral relief when the Supreme Court, in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), held that *Miller* applies retroactively on collateral review. Relying on *Montgomery*, Ms. Howell moved to reopen the collateral proceedings in the Greene County Criminal Court, [Second Am. Pet. ¶ 11(c)], but the Greene County Criminal Court denied her motion, [Greene Cty. Criminal Ct. Second Order, Doc. 23-5, at 3–5]. According to the Greene County Criminal Court, the record was "abundantly clear" that it "complie[d] with all the requirements of" *Miller* and *Montgomery* by taking "into consideration the petitioner's youth and the attendant circumstances associated with youth when [it] sentenced her." [*Id.* at 3–4]. Specifically, it noted that, during Ms. Howell's sentencing, it heard and weighed her testimony about her "childhood, family life, social history, intelligence, and educational background." [*Id.* at 4]. The Tennessee Court of Criminal Appeals agreed that the trial court satisfied *Miller* and *Montgomery*: "[T]he imposition of sentences of life without parole in this case was done only after the presentation and consideration of mitigating factors, including those specific to the petitioner's youth, history of abuse, and mental health." [Tenn. Ct. Criminal Appeals Second Order, Doc. 23-6, at 3]. The Tennessee Supreme Court denied her application for permission to appeal. [Tenn. Supreme Court Second Order, Doc. 23-7, at 1].

Ms. Howell then attempted to chart a path back to federal court. She moved the Sixth Circuit for leave to file a second or successive § 2254 petition, and the Sixth Circuit granted her

motion, determining that "*Howell* has shown that her claim is based on *Miller* and 'warrant[s] a fuller exploration in the district court.'" [Sixth Circuit Order, Doc. 1-2, at 3 (alteration in original) (quotation omitted)].[1] While Ms. Howell's § 2254 claim under *Miller* and *Montgomery* was pending in this Court, the Supreme Court was in the process of deciding *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), and the parties agreed that a stay was appropriate until the Supreme Court rendered its decision in *Jones*, [Pet'r's Mot. Stay Proceedings, Doc. 30, at 1–2]. Last year, the Supreme Court issued its opinion in *Jones*, and this Court lifted the stay of this case. [Order Lifting Stay, Doc. 35, at 1]. Afterwards, Ms. Howell filed a second amended petition in which she alleges that "[t]he sole ground for this Second Amended Petition is . . . *Jones v. Mississippi*, 141 S. Ct. 1307, 1320 n.7 (2021)[.]" [Second Am. Pet. ¶ 12]. The State of Tennessee opposes her petition. [Answer at 5–8]. Having carefully reviewed and considered Ms. Howell's claim and the parties' arguments, the Court is now prepared to rule on them.

## II.   LEGAL STANDARD

If a state prisoner believes her conviction violates the United States Constitution, her exhaustion of appeals at the state level is not a coup de gráce to her cause. She may petition a federal district court for a writ of habeas corpus. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 *et seq.*, governs claims for habeas relief. Section 2254(d) of the AEDPA states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[1] The Sixth Circuit also stated that "Howell's sentencing transcript is not included in the record before us. Although the Tennessee Court of Criminal Appeals, in denying a motion to re-open Howell's post-conviction proceedings, noted that the sentencing court considered Howell's youth as a mitigating factor, the accuracy of this finding cannot be reviewed without a copy of the sentencing transcript." [Sixth Circuit Order at 3]. It therefore transferred Ms. Howell's case to this Court for further proceedings. [*Id.*].

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1)–(2). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)," *Harrington v. Richter*, 562 U.S. 86, 98 (2011), which, together, form a standard of review known as "AEDPA deference," *Fitzpatrick v. Robinson*, 723 F.3d 624, 633, 637 (6th Cir. 2013). AEDPA deference is a "strict standard of review"[2] and "means. . . . federal courts defer to state court decisions." *Minnick v. Winkleski*, 15 F.4th 460, 467–68 (7th Cir. 2021); *see Harrington*, 562 U.S. at 102–03 ("Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." (quotation omitted)); *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

Under § 2254(d)(1), the first exception, "a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Under § 2254(d)(2), the second exception, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

---

[2] The Supreme Court has described AEDPA deference as "create[ing] 'a substantially higher threshold' for obtaining relief than de novo review," *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation omitted), and one scholar has described it as "one of the most uncharitable standards of review known to law," Justin F. Marceau, *Challenging the Habeas Process Rather than the Result*, 69 Wash. & Lee L. Rev. 85, 97 (2012).

from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Id.* (citing *Harrington*, 562 U.S. at 100; *Williams v. Taylor*, 529 U.S. 362, 412–13, (2000))). In short, a state court's determination that a claim is without merit will preclude habeas relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 100 (citation omitted)); *see Woods v. Donald*, 575 U.S. 312, 316 (2015) ("When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.").

## III. ANALYSIS

In *Jones*, the Supreme Court held that *Miller* and *Montgomery* do not require a sentencer to make a separate factual finding or an implicit finding that a juvenile defendant is permanently incorrigible before imposing a life-without-parole sentence. *Jones*, 141 S. Ct. at 1311–21. The Supreme Court took care to note that its holding in *Jones* did not disturb its holdings in *Miller* or *Montgomery*. *Id.* at 1321. Although *Jones* did not narrow or expand *Miller* or *Montgomery*, Ms. Howell relies exclusively on *Jones* in pursuing habeas relief. Again, in her second amended petition, she states that "[t]he sole ground for [relief] is . . . *Jones v. Mississippi*, 141 S. Ct. 1307, 1320 n.7 (2021)," [Second Am. Pet. ¶ 12], and in her reply brief, she emphasizes that her "case *is* footnote 7" of *Jones*, [Pet'r's Reply at 2]. Footnote seven of *Jones* states:

> This Court's death penalty cases recognize a potential Eighth Amendment claim if the sentencer expressly refuses *as a matter of law* to consider relevant mitigating circumstances. *See Eddings v. Oklahoma*, 455 U.S. 104, 114–115, 102 S. Ct. 869, 71 L.Ed.2d 1 (1982). By analogy here, if a sentencer considering life without parole for a murderer who was under 18 expressly refuses as a matter of law to consider the defendant's youth (as opposed to, for example, deeming the defendant's youth to be outweighed by other factors or deeming the defendant's youth to be an insufficient reason to support a lesser sentence under the facts of the case), then the

> defendant might be able to raise an Eighth Amendment claim under the Court's precedents. In any event, we need not explore that possibility because the record here does not reflect that the sentencing judge refused as a matter of law to consider Jones's youth.

*Jones*, 141 S. Ct. at 1320 n.7. Ms. Howell claims that "the evidence is overwhelming" that the Greene County Criminal Court "did not consider [her] youth as a relevant mitigating factor as a matter of law." [Pet'r's Reply at 13].

## A. AEDPA Deference

Before addressing Ms. Howell's claim, the Court must determine the proper standard of review to apply to it by deciding whether AEDPA deference or, instead, a different standard of review is appropriate. *See Ray v. Maclaren*, 655 F. App'x 301, 308 (6th Cir. 2016) ("Because the deference owed to a state court decision can be dispositive of the claim, a federal court reviewing a habeas petition must first address this 'threshold question of the proper standard of review'—specifically, whether AEDPA deference or *de novo* review applies." (quoting *Robinson v. Howes*, 663 F.3d 819, 822 (6th Cir. 2011))); *English v. Berghuis*, 529 F. App'x 734, 740 (6th Cir. 2013) ("Before a reviewing court reaches the question of the reasonableness and conformity to relevant precedent of the state court adjudication . . . it must first confront a more primal question: whether the defendant's claim was actually adjudicated by the state courts."). "Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review," which is "*de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Robinson*, 663 F.3d at 823 (quotation omitted)).

The state courts did not specifically decide whether Ms. Howell's sentencer "expressly refuse[d] *as a matter of law*" to consider her youth and attendant characteristics. *Jones*, 141 S. Ct. at 1320 n.7. After all, *Jones*, the sole basis for Ms. Howell's request for relief, did not exist when Ms. Howell was challenging her convictions in the state courts, and *Jones*'s non-existence

8

at the time might suggest the state courts did not have an opportunity to adjudicate the precise claim that she now raises under footnote seven of *Jones*. But because the state courts denied her federal claim for collateral relief under *Miller* and *Montgomery*—both of which *Jones* clarified but did not disturb—this Court must presume that they adjudicated her claim on the merits. *See Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) ("When a state court denies relief on a properly presented federal claim, we presume that the state court adjudicated that claim on the merits." (citing *Harrington*, 562 U.S. at 99)); *Minnick*, 15 F.4th at 467 ("We presume a state court adjudicated a claim on the merits unless the state court relied wholly on state law grounds for its decision or expressly declined to consider the claim." (citation omitted)).

More importantly, Ms. Howell readily admits that the state courts did in fact adjudicate her claim on the merits: "Here, the state courts (specifically, the Greene County Criminal Court and the CCA) did adjudicate Petitioner's *Montgomery* claim on the merits, and they purported to apply *Miller* and *Montgomery* to it." [Pet'r's Reply at 18]; *see* [*id.* at 5 ("Petitioner has based her claim solely on *Montgomery* (and on *Montgomery*'s subsequent clarification in *Jones*).")]. Because Ms. Howell concedes that the state courts addressed her claim on the merits, the Court must accord AEDPA deference to the state courts' decisions. *See Hand v. Houk*, 871 F.3d 390, 419 (6th Cir. 2017) ("As the Ohio Supreme Court addressed this claim on the merits, we are *required* to grant that decision AEDPA deference on review." (emphasis added)); *Hogan v. Gibson*, 197 F.3d 1297, 1306 (10th Cir. 1999) (recognizing that "[d]eference to the state court under AEDPA is . . . required for 'any claim that was adjudicated on the merits in State court proceedings'" (quoting 28 U.S.C. § 2254(d)) (citations omitted)); *see also Cornwell v. Bradshaw*, 559 F.3d 398, 405, 415 (6th Cir. 2009) (applying AEDPA deference when the petitioner conceded that it applied).

Case 2:18-cv-00109-JRG-CRW   Document 43   Filed 06/24/22   Page 9 of 21   PageID #: 1556

**B. The Merits of Ms. Howell's Claim**

Ms. Howell challenges the state courts' adjudication of her claim under § 2254(d)(1) and (d)(2), though she devotes her argument almost fully to § 2254(d)(2). Under § 2254(d)(2), she asserts that "both State courts made an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding' within the meaning of section 2254(d)(2) in that they both found (erroneously) that [the Greene County Criminal Court] had, in fact, considered Petitioner's youth and its attendant characteristics." [Pet'r's Reply at 18]. Under § 2254(d)(1), she concedes the state courts acknowledged that *Miller* and *Montgomery* required the Greene County Criminal Court to consider her youth and attendant characteristics, and she argues that their decisions were not contrary to, or an unreasonable application of, *Miller* and *Montgomery* only in "that limited sense." [*Id.*]. In response, the State contends that her claim is untimely and that it fails on the merits because the Greene County Criminal Court did consider her youth and attendant characteristics. [Answer at 5–8]. The Court will begin, and end, by addressing Ms. Howell's claim on the merits, which cannot withstand AEDPA deference. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) ("Even though [the petitioner's] motion may have been untimely, this court need not reach the issue because the motion fails on the merits[.]").

1. § 2254(d)(2): The Reasonableness of the State Courts'
   Determination of the Facts

The underlying record shows—incontrovertibly—that the Greene County Criminal Court considered Ms. Howell's youth and attendant characteristics and that the state courts, in light of the record before them, therefore did not make an unreasonable determination of the facts. In *Miller*, the Supreme Court recognized that a "wealth of characteristics and circumstances [can be] attendant" to a juvenile defendant's youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 U.S. at 476–77. It then touched on certain

10

characteristics and circumstances that may prove to be germane to an assessment of a juvenile's immaturity, impetuosity, and inability to appreciate risks and their consequences: "the family and home environment that surrounds [her]," "the extent of [her] participation in the conduct," "the way familial and peer pressures may have affected [her]," "incompetencies associated with [her] youth," and "the possibility of rehabilitation." *Id.* at 477–78. The underlying record is flush with evidence as to each of these characteristics and circumstances, and it is pellucid that the Greene County Criminal Court considered each of them.

a.  *Ms. Howell's Home and Surrounding Environment*

The Greene County Criminal court expressly stated that it considered evidence showing that Ms. Howell was "abused and neglected as a child." [Hr'g. Tr. II, Doc. 13, at 1042:9–12]. This evidence consisted of Ms. Howell's testimony that her parents were incessantly fighting, which led, ultimately, to their divorce when she was nine years old; [Hr'g Tr. I, Doc. 12-1, at 560:8–14, 561:3–9]; that, at one point, she ran away from home; [*id.* at 570:14]; and that her uncle and his son sexually molested her when she was five or six years old and continued their abuse of her for years, until she was ten or eleven, [*id.* at 562:5–11].

In addition, she testified that her father had a "major drinking problem," [*id.* at 561:11], and like her father, she began abusing alcohol herself, as well as other drugs including hashish, marijuana, shake, LSD, PCP, and cocaine, [Hr'g Tr. II at 630:5–25, 631:1–2]. She also testified that she had "a lot of problems" with her mother, who, as a devout Christian, was opposed to her practice of witchcraft and black magic. [Hr'g Tr. I at 561:18–23, 570:18–25, 573:10]. Again, the Greene County Criminal Court stated that it considered all of this evidence—evidence of her abuse and neglect as a child—as a mitigating factor. [Hr'g. Tr. II at 1042:9–12].

11

b. *The Extent of Ms. Howell's Participation in the Criminal Conduct*

The Greene County Criminal Court also carefully considered evidence of the extent of Ms. Howell's participation in the mass murders of the Lillelids. Although it acknowledged that Ms. Howell was an accomplice, rather than the murderer, and had expressed remorse for her conduct, it found that her role in the murders was significant:

> You participated in everything [leading up to the murders]. You helped steal guns and money. You helped initiate the plans for the trip . . . . You were at the picnic table at the rest area with the Lillelids when they were kidnapped, when they were crying. You were outside the van watching the Lillelids be murdered. You did nothing to stop [it], when a weapon was available. You deliberately and knowingly participated in every aspect of the killings and the things that led to them, including the getaway and cover up.

[*Id.* at 1042:4–5, 1042:12, 1042:19–25, 1043:1–2]. In a similar vein, the Greene County Criminal Court stated that "the occult mark," a reference to the record evidence of Ms. Howell's practice of witchcraft, "continued on this case throughout the events that transpired." [*Id.* at 1042:16–17]. The Greene County Criminal Court's statements and findings about Ms. Howell's involvement in the murders show that it thoroughly considered the extent of her participation in the criminal conduct.

c. *The Effect of Peer Pressure on Ms. Howell*

Next, the record establishes that the Greene County Criminal Court also considered the way that peer pressure may have affected Ms. Howell's decision making. In particular, it stated that, as a mitigating factor, it considered the evidence showing that Ms. Howell "subordinate[s ] [herself] to the needs of others in a group." [*Id.* at 1042:11–12]. This evidence consisted of Ms. Howell's testimony that she did not fit in at school because she had always been "quiet and withdrawn," [Hr'g Tr. I at 569:23–25, 570:1–4], as well as her testimony that she and her co-defendants drank each other's blood so they would feel "closer together," [*id.* at 577:14–22],

12

consumed alcohol together, [*id.* at 586:8–14], and attempted suicide together, [*id.* at 575:18–25, 576:21–25, 577:1–7]. Again, the Greene County Criminal Court considered this evidence, having stated that, as a mitigating factor, it acknowledged that Ms. Howell subordinates herself to others in a group. [Hr'g Tr. II at 1042:11–12].

### d.  *Ms. Howell's Incompetencies*

The record also plainly demonstrates that the Greene County Criminal Court considered Ms. Howell's incompetencies because it stated that her "borderline retarded IQ of 78" was a mitigating factor. [*Id.* at 1042:10–11].

### e.  *Ms. Howell's Possibility of Rehabilitation*

Lastly, the Greene County Criminal Court also considered Ms. Howell's possibility of rehabilitation. Citing a clinical psychologist's report, it found that Ms. Howell was "not likely to be rehabilitated" and had only a "fair to guarded [possibility of rehabilitation], at best, even with extended treatment." [*Id.* at 1043:3–5]; *see* [Dr. Miller's Report, Doc. 12-2, at 8 (opining that Ms. Howell had only a "fair to guarded" possibility of rehabilitation—even with long-term psychiatric care, including therapy and psychiatric medication)].

### f.  *Recapitulation*

So, in sum, the Greene County Criminal Court considered the very circumstances and characteristics of youth that the Supreme Court articulated in *Miller*, *i.e.*, Ms. Howell's family and home environment, the extent of her participation in the criminal conduct, the way peer pressure affected her, her incompetencies, and her possibility of rehabilitation. *Miller*, 567 U.S. at 477–78. In fact, Ms. Howell later in her legal brief goes on to acknowledge, as she must, that the Greene County Criminal Court *did* actually consider evidence of these circumstances and characteristics: "The *only* mitigating factors that [the court] considered were that: Petitioner

13

was abused and neglected as a child; she had a borderline retarded IQ of 78; she subordinated herself to the needs of others in a group; and she had shown remorse." [Pet'r's Reply at 19]. Yet, with this acknowledgment, she suggests that the Greene County Criminal Court's consideration of these mitigating factors was somehow insufficient, but this suggestion is completely at odds with *Miller*, and she makes no appreciable attempt to explain why the Greene County Criminal Court's consideration of these factors—the very factors that the Supreme Court expounded in *Miller*—is insufficient. Having carefully reviewed the underlying record, this Court, therefore, cannot conclude that the state-court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), or put another way, that "extreme malfunctions" occurred in the state courts' criminal justice system, *Harrington*, 562 U.S. at 102 (quotation omitted). Ms. Howell is not entitled to the extraordinary remedy of habeas relief under § 2254(d)(2).

2. § 2254(d)(1): Contrary to or Unreasonable Application of Clearly
   Established Federal Law

Next, to the extent that Ms. Howell invokes *Jones* to contend that the Greene County Criminal Court—by "expressly refus[ing] *as a matter of law*" to consider her youth and attendant characteristics, *Jones*, 141 S. Ct. at 1320 n.7—rendered a decision that "was contrary to" or "an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1), this contention, too, lacks merit. Although the Supreme Court, in *Jones*, did not define the phrase "expressly refuses *as a matter of law*," *id.* at 1320 n.7, it cited its death-penalty jurisprudence, namely, *Eddings v. Oklahoma*, 445 U.S. 104 (1982), as a case in which a sentencer expressly refused as a matter of law to consider relevant mitigating evidence. *Jones*, 141 S. Ct. at 1320 n.7.

In *Eddings*, the juvenile defendant "presented substantial evidence at the [sentencing] hearing of his troubled youth," 455 U.S. at 107, but the state court, before ultimately sentencing

14

him to death, stated that, "in following the law," it could not "consider the fact of this young man's violent background," *id.* at 109. From this statement, the Supreme Court determined that "it is clear that the trial judge did not evaluate the evidence in mitigation and find it wanting as a matter of fact; rather he found that *as a matter of law* he was unable even to consider the evidence." *Id.* at 876. The Supreme Court went on to state that while a sentencer may decide the amount of weight to assign to relevant mitigating evidence of a juvenile defendant's youth and attendant characteristics, it may not give it "*no weight* by excluding such evidence from [its] consideration." *Id.* at 114–15 (emphasis added) (footnote omitted).

Ms. Howell argues that the Greene County Criminal Court did just that—*i.e.*, gave the mitigating evidence of her youth and attendant characteristics no weight. First, she points out that the Greene County Criminal Court said that "there are no mitigating factors under § 40-35-113, or from any other source." [Pet'r's Reply at 7 (quoting Hr'g Tr. II at 1040:18–19)]. This statute, Tennessee Code Annotated § 40-35-113, "contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence 'if appropriate for the offense.'" *State v. Thomas*, No. W2010–00949–CCA–R3–CD, 2011 WL 2698320, at *8 (Tenn. Ct. Crim. App. July 11, 2011) (quoting Tenn. Code. Ann. § 40-35-113). Subsection 40-35-113(6), which is the particular subsection at issue here, contains one of those mitigating factors, and it states that "[i]f appropriate for the offense, mitigating factors may include" consideration of whether "[t]he defendant, because of youth or old age, lacked substantial judgment in committing the offense." Tenn. Code Ann. § 40-35-113(6). Ms. Howell insists that the Greene County Criminal Court expressly determined that § 40-35-113(6) was inapplicable and therefore "necessarily excluded any consideration of [her] youth and attendant circumstances." [Pet'r's Reply at 7 (footnote omitted)].

Second, Ms. Howell also underscores the fact that the Greene County Criminal Court, under Tennessee Code Annotated § 39-13-204—a statute that contains additional mitigating factors for a sentencer's consideration—did not identify subsection (j)(7) as a mitigating factor. [Pet'r's Reply at 7–8]. Subsection 39-13-204(j)(7) provides that the "youth or advanced age of the defendant at the time of the crime" is a mitigating factor that a sentencer "shall consider." The Greene County Criminal Court, however, addressed mitigating circumstances under only subsections (j)(1) and (j)(5), which list as mitigating factors a defendant's lack of meaningful criminal history and a defendant's relatively minor participation as an accomplice in a murder, respectively. [Hr'g Tr. II at 1041:25, 1042:1–8].[3] Ms. Howell contends that the Greene County Criminal Court's failure to account for § 39-13-204(j)(7) demonstrates that it expressly refused as a matter of law to consider her youth and attendant characteristics. [Pet'r's Reply at 7–8].

The underlying record is not fully clear why the Greene County Criminal Court was reticent or unwilling to apportion weight to Ms. Howell's youth when it addressed the relevant mitigating factors under § 40-35-113(6) and § 39-13-204(j)(7), specifically, but then went on to consider many of those same or similar mitigating factors—*i.e.*, her childhood abuse, the effect of peer pressure on her, her incompetencies, her prospect of rehabilitation, and the extent of her participation in the murders—before sentencing her to life without parole. *See State v. Kelley*, 34 S.W.3d 471, 481–82 (Tenn. Ct. Crim. App. 2000) (recognizing that § 40-35-113(6) "refers to a defendant's youth in the context of his or her 'age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his [or her] conduct.'" (alterations in

---

[3] The Greene County Criminal Court, despite raising § 39-13-204(j)(5), did not appear to find that Ms. Howell's role as an accomplice in the murder was relatively minor. Instead, it stated, "I'll say again that no part in this horrible crime can be minor, but it's purely a relative statement." [Hr'g Tr. II at 1042:6–7].

16

original) (quoting *State v. Adams*, 864 S.W.2d 31, 33 (Tenn. 1993))). While sentencing one of Ms. Howell's co-defendants, Crystal Sturgill,[4] the Greene County Criminal Court did mention that "[y]outh has been suggested by several as a mitigating circumstance" and that "[all the defendants] w[ere] about the same age, except for Jason Bryant."[5] [Hr'g Tr. II at 1034:1–3]. But for the older defendants who had suffered abuse during their childhoods, it dismissed the view that youth was a mitigating factor because their experiences with abuse should have matured them "more than the average person." [*Id.* at 1034:5]. Yet despite suffering abuse in their own lives, they showed no compunction about inflicting abuse on the Lillelids, the Greene County Criminal Court stated, and it therefore found that "[t]he mitigating circumstances [of youth] are rebutted." [*Id.* at 1034:5–9].

This Court is uncertain whether the Greene County Criminal Court intended for these statements—which ostensibly show that it considered, but rejected, youth as a mitigating factor under § 40-35-113(6) and § 39-13-204(j)(7)—to apply only to Ms. Sturgill or to all the older defendants who had suffered abuse, including Ms. Howell. But this Court has no need to try to divine the Greene County Criminal Court's intentions because, for all the reasons this Court has stated up to this point, the Greene County Criminal Court indisputably considered Ms. Howell's youth and attendant characteristics as contemplated by the Supreme Court in *Miller*. Again, and at the risk of belaboring the issue, the Greene County Criminal Court considered her childhood abuse, the effect of peer pressure on her, her incompetencies, her prospect of rehabilitation, and the extent of her participation in the crimes—the very characteristics and circumstances that the Supreme Court in *Miller* described as relevant to an evaluation of a juvenile's immaturity,

---

[4] All the defendants' cases were consolidated, and the Greene County Criminal Court sentenced all of the defendants on the same date, February 20, 1998. [Hr'g Tr. I at 1].

[5] Again, at the time of the murders, "Howell was seventeen years old; Bryant was fourteen years old; and each of the remaining co-defendants was at least eighteen years old." *Howell*, 185 S.W.3d at 324.

impetuosity, and inability to appreciate risks. *Miller*, 567 U.S. at 477–78. Only after considering these relevant characteristics and circumstances, and finding them "to be an insufficient reason to support a lesser sentence under the facts of the case," *Jones*, 141 S. Ct. at 1320 n.7, did it sentence Ms. Howell to life without parole, *see* [Hr'g Tr. II at 1042:13–14, 1043:7–9 ("All those [mitigating circumstances], though, are overcome by and rebutted by the credible facts of the case . . . . I sentence you to serve a sentence of life imprisonment, without the possibility of parole[.]").

But even if Ms. Howell is correct that the Greene County Criminal Court ran crosswise with the Supreme Court's comments in footnote seven of *Jones*—her alleged "sole ground" for habeas relief, [Second Am. Pet. ¶ 12]—by expressly refusing as a matter of law to consider her youth and attendant characteristics, her claim would still fail because footnote seven of *Jones*, as the State maintains, is non-binding dicta and not clearly established law under § 2254(d)(1), *see* [Answer at 7 (contending that "[t]his footnote has no application to Petitioner's case, as the [Supreme] Court merely addressed a hypothetical scenario that could possibly give rise to a colorable Eighth Amendment claim")]. "Dictum" refers to "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016) (quotation omitted).

Generally, courts, of course, "treat dicta in case law as non-binding," but "there is some disagreement within the Sixth Circuit as to how much weight the federal judiciary should afford to Supreme Court dicta." *United States v. Miller*, 604 F. Supp. 2d 1162, 1167 (W.D. Tenn. 2009) (citing *Kelly v. Burks*, 415 F.3d 558, 563 (6th Cir. 2005))). On one hand, the Sixth Circuit has declared that it "finds itself 'obligated to follow Supreme Court dicta, particularly when there

18

is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale,'" *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 816 n.2 (6th Cir. 2020) (quotation omitted), but on the other hand, it has also said that Supreme Court dicta are "of *persuasive* precedential value," *Wright v. Morris*, 111 F.3d 414, 419 (6th Cir. 1997) (emphasis added) (quotation omitted).

Although the Supreme Court's dicta may be authoritative in some contexts, habeas proceedings under § 2254 are not one of them because dicta cannot serve as clearly established law under § 2254(d)(1). *See Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) ("This Court's dicta cannot supply a ground for relief [under § 2254(d)(1)]. Nor can a holding that speaks at a high level of generality." (citations omitted)); *Jones v. Bell*, 801 F.3d 556, 564 (6th Cir. 2015) ("Federal law is clearly established 'only when it is embodied in a holding' of the Supreme Court; dicta does not count." (quoting *Thaler v. Haynes*, 559 U.S. 43, 47 (2010))). The Supreme Court's comments in footnote seven of *Jones* are precisely that—*comments*. In footnote seven, the Supreme Court spoke not only at a high level of generality, contemplating that a juvenile defendant "*might* be able to raise an Eighth Amendment claim" if a sentencer expressly refuses as a matter of law to consider her youth and attendant characteristics, *Jones*, 141 S. Ct. at 1320 n.7 (emphasis added), but it also unmistakably recognized that it was not addressing the issue before it, *i.e.*, whether a sentencer must separately find that a juvenile defendant is permanently incorrigible before sentencing her to life without the possibility of parole, *see id.* ("In any event, we need not explore that possibility because the record here does not reflect that the sentencing judge refused as a matter of law to consider Jones's youth.").

Footnote seven of *Jones* is therefore dicta. *See Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010) (rejecting the petitioner's claim under § 2254(d)(1) after determining that "[t]he

footnote upon which [he] relie[d] did not" constitute clearly established law and "was merely a comment"). As dicta, it cannot form a claim under § 2254(d)(1). *Davenport*, 142 S. Ct. at 1525; *Bell*, 801 F.3d at 564. Ms. Howell's reliance on footnote seven as the "sole ground" for her claim is therefore fatal to her pursuit of habeas relief. [Second Am. Pet. ¶ 12]; *see* [Pet'r's Reply at 2 (emphasizing that her "case *is* footnote 7" of *Jones*)]. And even if footnote seven is not dicta, Ms. Howell's exclusive reliance on *Jones* would still be fatal to her claim because, as the Court touched on earlier in this opinion, *Jones* did not exist when the state courts denied her requests for collateral relief, and it therefore cannot qualify as clearly established law. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("[T]he meaning of the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to holdings, as opposed to the dicta, of the Court's decision *as of the time of the relevant state-court decision*." (emphasis added)). In sum, the state courts' decisions were not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, and therefore, Ms. Howell is not entitled to the extraordinary remedy of habeas relief under § 2254(d)(1).

## C. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Ms. Howell to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(A). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Ms. Howell's claim, the Court does not conclude that reasonable jurists would find that its rejection of her claim is

debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Ms. Howell.

## IV. CONCLUSION

Ms. Howell fails to establish that the state courts' adjudication of her claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. Her Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. 34] is therefore **DENIED**, and this case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE